**NORFOLK SHIPBUILDING &
DRYDOCK CORPORATION,
Plaintiff,**

v.

**M/V SEQUOIA, Official No. 225115, Her
Engines, Tackle, Etc., in rem, and the
Presidential Yacht Trust, in personam,
Defendants.**

**Civ. A. No. 90–1797–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

June 5, 1991.

claim presented against individual under feder-
al Motor Vehicle Information and Cost Savings

## JUDGMENT ORDER

DOUMAR, District Judge.

The plaintiff, Norfolk Shipbuilding & Drydock Corporation ("Norshipco"), brought this action to enforce a maritime lien against the M/V SEQUOIA and a promissory note against the Presidential Yacht Trust Fund ("the Trust"), owner of the SEQUOIA. The Trust did not appear in the case, although during the final pretrial conference the Court conducted a telephone conference call with Mr. Josh Lanier, Executive Director of the Trust. As a result of that conference the Court extended the date of the sale of the vessel, but did not change the trial date. Mr. Lanier did not represent that the Trust opposed plaintiff's contentions.

A trial was held, at which plaintiff presented evidence by way of testimony and documents. This Court makes the following findings of fact based upon the evidence presented:

1. Norshipco and the *in personam* defendant, The Presidential Yacht Trust ("the Trust"), owner of the *in rem* defendant, motor yacht SEQUOIA, Official Number 225115, entered into a contract dated January 31, 1986, for the refurbishment of SEQUOIA, which work took place between January 23, 1986 and July 31, 1986.

2. After completion of the work, Norshipco and the Trust agreed upon a final price of $3,000,000.00, after which a final agreed invoice in that amount was issued October 14, 1986.

3. Said invoice reflected the receipt of partial payments totalling $795,000.00, leaving an agreed balance due as of October 14, 1986, of $2,205,000.00.

4. After redelivery, the Trust operated SEQUOIA, but failed to make any further payments to Norshipco. On or about July 29, 1988, the Trust, via its Executive Director, delivered to Norshipco a demand

Act, pendent state law claims dismissed).

Promissory Note effective August 1, 1988, providing for payment of $2,205,000.00 plus interest at Crestar Bank's announced prime rate, plus costs and reasonable attorneys' fees with respect to any action to enforce the note. Said note specifically reserved and retained for Norshipco its maritime lien against SEQUOIA.

5. On or about February 3, 1989, the Trust redelivered SEQUOIA to Norshipco and contracted for Norshipco to provide safe storage, care, maintenance and security for the vessel.

6. With additional costs and charges accruing and no payments received, Norshipco filed suit, *in personam* against the Trust and *in rem* against SEQUOIA, on November 5, 1990, at which time SEQUOIA was arrested and turned over to Norshipco as substitute custodian.

At the conclusion of trial counsel for plaintiff were directed to prepare an order conforming to rulings made orally by the Court. The proposed order submitted by counsel for plaintiff has raised a number of issues which the Court must address.

The Court had indicated at trial that it would consider a request that premiums paid for insurance on the SEQUOIA would be included in the lien against the vessel. Plaintiff provided authority on this point, and the Court GRANTS the request.

However, the Court expressly ruled that it would not include prejudgment interest in the lien. Counsel for plaintiff, on counsel's own initiative, in their proposed judgment order listed prejudgment interest as part of the lien against the SEQUOIA. The Court was obliged to direct the court reporter to print the transcript of the trial, as the Court remembered that it had denied prejudgment interest. The transcript confirmed that prejudgment interest had been denied.

The plaintiff is ORDERED to pay the court reporter $50.00 for the cost of preparing the transcript.

■ Prejudgment interest is generally awarded in admiralty cases unless there are "peculiar circumstances" which would make it inequitable for the losing party to pay prejudgment interest. *Getty Marine Corp. v. Jade Shipping Co.*, 1983 AMC 550 (E.D.Va.1982). In this case, peculiar circumstances exist. The Court finds as a fact that the progress of this case has been unreasonably delayed by the plaintiff. In fact, it has been marked by delays to the extent that the Court had to intervene in order to move the case along to trial. Where judgment is delayed through the inaction of the plaintiff, it would be inequitable to award prejudgment interest. Furthermore, an award of prejudgment interest implicates the interests of other lienholders not present in the case.

The public policy of Virginia, as has been followed by equity courts, has been to extinguish a lien where the amount asked for was excessive and unwarranted. Although this Court finds that the amount of prejudgment interest asked for herein is excessive, the Court will not extinguish the lien. However, in light of the peculiar circumstances found by the Court, prejudgment interest under the lien is therefore DENIED.

■ Plaintiff also seeks prejudgment interest against the Trust. The Court had orally indicated at the conclusion of trial that it would award prejudgment interest against the Trust, but upon further consideration must vacate that award for the period of time predating the note, and hereby does so. The original contractual debt of the Trust, for work completed by July 31, 1986, was in the amount of $3,000,-000.00. The Trust made payments totalling $795,000 before a final invoice was issued October 14, 1986, reflecting a balance of $2,205,000. The invoice showed no other amount nor any claim for interest. The Trust eventually made a promissory note in favor of Norshipco in the sum of $2,205,000 and dated August 1, 1988, which was accepted by Norshipco. The note itself provides for interest on the principal sum of $2,205,000 at the announced prime rate of Crestar Bank, with the first interest payment to be made October 30, 1988, but is silent as to interest on the debt accruing before August 1, 1988.

The doctrine of merger therefore applies. Under that doctrine, the acceptance of a

note merges the underlying contractual debt into the obligation under the note and extinguishes it, to the extent that matters are not reserved by the terms of the note. *See* 12B Michie's Jurisprudence, Merger § 2 (1978). The note specifically reserved and retained plaintiff's maritime lien for repairs to SEQUOIA, but made no other reservation of any kind. The note did not reserve a right to prejudgment interest for the period until August 1, 1988, the date of the note. Accordingly, the Court DENIES prejudgment interest against the Trust except as expressly provided by the terms of the promissory note.

Based upon the foregoing findings of fact and conclusions of law, judgment is hereby entered in favor of Norshipco and against The Presidential Yacht Trust, *in personam,* in the following amounts:

| | | |
|---|---|---:|
| 1. | Negotiated contract balance | $2,205,000.00 |
| 2. | Note interest at state Crestar Prime Rate from August 1, 1988 through date of judgment, May 10, 1991 | $ 633,845.64 |
| 3. | Charges for storage, care, maintenance and security from February 3, 1989 to the date of arrest of SEQUOIA, November 5, 1990 | $ 53,270.01 |
| 4. | Administrative expenses while the SEQUOIA was under arrest: | |
| | —Substitute custodian fees $50.00 per day for the period 11/5/90 through March 28, 1991 | $ 7,100.00 |
| | —Insurance costs for protection of SEQUOIA while under arrest | $ 18,000.00 |
| | —Drydocking and repair to prevent further deterioration and sinking of SEQUOIA while under arrest | $ 53,864.00 |
| 5. | Legal fees as per promissory note through April 30, 1991 | $ 15,104.52 |

JUDGMENT AMOUNT AGAINST THE PRESIDENTIAL YACHT TRUST      $2,986,184.17

Further, judgment is hereby entered in favor of Norshipco against SEQUOIA, *in rem,* in the following amounts:

| | | |
|---|---|---:|
| 1. | Negotiated contract balance | $2,205,000.00 |
| 2. | Charges for storage, care, maintenance and security from February 3, 1989 to the date of arrest of SEQUOIA November 5, 1990, which includes $45,000.00 for insurance premiums paid by Norshipco | $ 53,270.01 |
| 3. | Administrative expenses while the SEQUOIA was under arrest: | |
| | —Substitute custodian fees $50.00 per day for the period 11/5/90 through 3/28/91 | $ 7,100.00 |
| | —Insurance costs for protection of the SEQUOIA while under arrest | $ 18,000.00 |
| | —Drydocking and repair to prevent further deterioration and sinking of the SEQUOIA while under arrest | $ 53,864.00 |

JUDGMENT AMOUNT AGAINST M/V SEQUOIA      $2,337,234.01

Interest shall run on the judgment at the federal judgment rate, until paid.

IT IS SO ORDERED.